UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MONROE BUSSEY,

                      Petitioner,

        -against-

MARK BRADT, Superintendent, Elmira
Correctional Facility,

                 Respondent.
-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

12 Civ. 8267 (NSR)(JCM)

To the Honorable Nelson S. Román, United States District Judge:

     Petitioner Monroe Bussey ("Petitioner") filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 dated October 28, 2012.[1] (Docket No. 1).  Petitioner's counsel filed

a memorandum of law in support of the petition dated November 14, 2012. (Docket No. 2).  By

affidavit and memorandum of law dated March 28, 2013, Respondent Mark Bradt,

Superintendent, Elmira Correctional Facility ("Respondent") opposed the petition. (Docket Nos.

7, 7-1).  Petitioner's counsel submitted a reply memorandum of law in support of his petition

dated April 23, 2013. (Docket No. 8).  For the reasons set forth below, I respectfully recommend

that the petition for a writ of habeas corpus be denied.

## I. BACKGROUND

### A. The Crime

     Petitioner's convictions arise from an incident in which Petitioner and two co-defendants

severely beat a man, placed him in the trunk of Petitioner's car, drove him approximately

---

[1] A *pro se* prisoner's papers are deemed filed at the time he or she delivers them to prison authorities for forwarding to the court clerk. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) (analyzing the *Houston* "prison mailbox rule").  Petitioner certified that he delivered the petition to prison authorities for mailing on October 29, 2012. (Docket No. 1 at 9).  Unless otherwise noted, the Court adopts Petitioner's dates for this filing and for all other filings discussed herein.

eighteen miles to Poughkeepsie, New York, and left him in a creek to die.  Construing the

evidence in the light most favorable to the state, *see, e.g.*, *Murden v. Artuz*, 497 F.3d 178, 184

(2d Cir. 2007) (citation omitted), the following relevant facts were established at trial.

In early September 2007, Petitioner told his friend, Bernard Quiles ("Quiles"), that he

was angry with Jeffrey Beary ("Beary") because the police had "[run] in his house" looking for

Beary and because Beary owed Petitioner money for marijuana. (T1[2]: 130-33; T9: 98-103).  On

September 3, 2007, Quiles saw Beary at a Labor Day waterfront festival in the City of

Newburgh, New York and contacted Petitioner. (T1: 133; T13: 39, 41, 48).  Petitioner stopped at

34 South Miller Street in Newburgh and told his friend Earl Bell, Jr. ("Bell") that Beary was at

the waterfront. (T4: 7, 10-11).  After that, Petitioner and Michael Thomas ("Thomas") went to

the festival, approached Beary, and asked him to hang out with them. (T9: 78-79, T14: 43-44,

47).

At approximately 9:00 p.m., Petitioner returned to Bell's apartment at 34 South Miller

Street with Beary and Thomas. (T2: 10-12; T4: 12-13; T14: 47-48).  A short while later, the three

men came downstairs and walked down the alleyway between 34 and 36 South Miller Street.

(T2: 12-14).  Witnesses heard the sounds of someone getting hit, along with the screams of

someone yelling that "he didn't do anything or see anything." (T2: 15, 121; T4: 15).  Bell and a

family friend, Stanford Boyd ("Boyd"), heard the screaming and ran downstairs. (T4: 9, 15).  In

---

[2] Numbers preceded by "T" refer to pages from the transcript of Petitioner's trial.  "T1" refers to proceedings held on March 26, 2008, (Docket Nos. 7-8, 7-9); "T2" refers to proceedings held on March 27, 2008, (Docket Nos. 7-10, 7-11); "T3" refers to proceedings held on March 28, 2008, (Docket Nos. 7-12, 7-13); "T4" refers to proceedings held on March 31, 2008, (Docket Nos. 7-14, 7-15); "T5" refers to proceedings held on April 1, 2008, (Docket Nos. 7-16, 7-17); "T6" refers to proceedings held on April 2, 2008, (Docket Nos. 7-18, 7-19); "T7" refers to proceedings held on April 3, 2008, (Docket Nos. 7-20, 7-21); "T8" refers to proceedings held on April 4, 2008, (Docket No. 7-22); "T9" refers to proceedings held on April 7, 2008, (Docket Nos. 7-23, 7-24); "T10" refers to proceedings held on April 8, 2008, (Docket Nos. 7-25, 7-26); "T11" refers to proceedings held on April 9, 2008, (Docket Nos. 7-27, 7-28); "T12" refers to proceedings held on April 10, 2008, (Docket Nos. 7-29, 7-30); "T13" refers to proceedings held on April 11, 2008, (Docket Nos. 7-31, 7-32); "T14" refers to proceedings held on April 14, 2008, (Docket No. 7-33); "T15" refers to proceedings held on April 15, 2008, (Docket Nos. 7-34, 7-35, 7-36); and "T16" refers to proceedings held on April 16, 2008, (Docket No. 7-37).

the alley, Boyd saw Petitioner kicking Beary in the chest and stomach and Thomas punching

Beary. (T4: 15-18).  Boyd heard Beary moaning and saw him "knocked unconscious on the

ground." (T4: 17-18).  The beating lasted approximately fifteen minutes. (T2: 15, 122).

Petitioner, Bell and Thomas stripped Beary to see if he was wearing a wire. (T2: 124; T4:

20-22).  Petitioner then dragged Beary from the alleyway to the fence in the backyard. (T4: 23-

24).  Beary was moaning and Boyd "could still hear him breathing a little bit." (T4: 24).

Petitioner asked Bell to go get a blanket from the apartment, which Bell did. (T4: 25-26).  When

Boyd returned from dropping off the Bell family dog at another location, the blanket was

wrapped around Beary's head and Petitioner was looking around the yard for Beary's cell phone.

(T2: 18-19; T4: 18, 25-27).

Petitioner's car, a silver or dark gray Mitsubishi Galant, was parked on South Miller

Street. (T2: 27; T4: 24).  Bell got in the car and drove it to Johnson Street while Petitioner

walked back down the alley to the backyard. (T2: 27-29; T4: 25).  Petitioner and Thomas pushed

Beary over the wooden fence in the backyard and loaded Beary into the trunk of Petitioner's car,

which Bell had parked at the neighbor's house. (T4: 28-29, 148, 155-56; T13: 67-68).  Petitioner

then drove his car, with Thomas and Bell as passengers, and with Beary in the trunk, to the City

of Poughkeepsie, New York. (T4: 29-30; T11: 44-45; T7: 124-25; T13: 69-70).  The men left

Beary in a creek near Cherry Street. (T13: 70-71).

Dr. Kari Reiber, Chief Medical Examiner for Dutchess County, conducted an autopsy on

Beary's body on September 5, 2007. (T5: 43-44, T10: 72-73, 85).  Dr. Reiber concluded that the

cause of death was multiple blunt impact trauma to the head and torso and that the manner of

death was homicide. (T10: 87-88).  Dr. Reiber observed extensive injuries including abrasions,

lacerations and contusions on Beary's head and torso, extreme swelling on the head, subdural

hemorrhage on the surface of the brain, superficial incised wounds on the neck, extensive hemorrhage on the lower chest area and back, a fractured clavicle, three fractured ribs, a tear in the left lung, an accumulation of air and blood in the chest cavity, multiple internal injuries and multiple organ injuries. (T10: 93-103).  Dr. Reiber suspected that many of the injuries to Beary's back, abdomen, arms and legs could have been caused as Beary died or after death. (T10: 99, 102).  Dr. Reiber also found vomit on Beary's face and on the blanket that was wrapped around his head. (T10: 88).  Beary had reaspirated the vomit into his lungs, and the reaspirated vomit had caused a chemical pneumonia. (T10: 118).  Dr. Reiber estimated that it took one to two hours for a chemical pneumonia to form and concluded that Beary was alive for at least one to two hours after he reaspirated the vomit. (T10: 124-26).  Dr. Reiber estimated that the time of death was "at least approximately 12 hours before [she] examined him"—*i.e.*, by approximately 11:30 p.m. on September 3, 2007. (T10: 107-08).

Petitioner was arrested on September 7, 2007 while driving his car. (T7: 27-28).  Police executed a search warrant at his residence and recovered items including a digital scale, drug paraphernalia, and baggies of marijuana. (T9: 6-24).

## B.  Indictment and Plea

By Indictment Number 2007-805, Petitioner, Bell and Thomas ("Defendants") were charged with three counts of murder in the second degree (intentional murder,[3] depraved

---

[3] N.Y. Penal Law § 125.25(1) provides, in relevant part, that a person is guilty of second degree murder when, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person."

indifference murder[4] and felony murder[5]) (counts one, two and three), kidnapping in the first degree[6] (count four) and tampering with physical evidence[7] (count five). (Ex.[8] 1).  Petitioner was also charged with criminal possession of marijuana in the fourth degree[9] (count six) and two counts of criminally using drug paraphernalia in the second degree (counts seven[10] and eight[11]). (*Id.*).

---

[4] N.Y. Penal Law § 125.25(2) provides, in relevant part, that a person is guilty of second degree murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[5] N.Y. Penal Law § 125.25(3) provides, in relevant part, that a person is guilty of second degree murder when, "[a]cting either alone or with one or more other persons, he commits or attempts to commit . . . kidnapping, . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants."

[6] N.Y. Penal Law § 135.25(3) provides, in relevant part, that "[a] person is guilty of kidnapping in the first degree when he abducts another person and when . . . [t]he person abducted dies during the abduction or before he is able to return or to be returned to safety."

[7] N.Y. Penal Law § 215.40(2) provides that a person is guilty of tampering with physical evidence when, "[b]elieving that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, he suppresses it by any act of concealment, alteration or destruction, or by employing force, intimidation or deception against any person."

[8] Refers to exhibits attached to Lauren E. Grasso's Affirmation in Opposition to a Petition for a Writ of Habeas Corpus. (Docket No. 7).

[9] N.Y. Penal Law § 221.15 provides that "[a] person is guilty of criminal possession of marihuana in the fourth degree when he knowingly and unlawfully possesses one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than two ounces."

[10] N.Y. Penal Law § 220.50(2) provides that "[a] person is guilty of criminally using drug paraphernalia in the second degree when he knowingly possesses or sells: . . . [g]elatine capsules, glassine envelopes, vials, capsules or any other material suitable for the packaging of individual quantities of narcotic drugs or stimulants under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for the purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant."

[11] N.Y. Penal Law § 220.50(3) provides that "[a] person is guilty of criminally using drug paraphernalia in the second degree when he knowingly possesses or sells: . . . [s]cales and balances used or designed for the purpose of weighing or measuring controlled substances, under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant."

On September 25, 2007, Petitioner appeared before the County Court of the State of New York, County of Orange ("Orange County Court") and entered a plea of not guilty. (Grasso Aff.[12] ¶ 3).

## C.  Pre-Trial Proceedings

The court held a joint pre-trial hearing on January 28 and January 29, 2008 and issued a written decision dated March 11, 2008 denying Defendants' motions to suppress. (Ex. 2).  In particular, the court held that: (i) the photo arrays used to identify Defendants were not unduly suggestive, and the method used by the police in showing the arrays to various witnesses was proper; (ii) Defendants' statements at the Newburgh police station were made voluntarily after Defendants waived their *Miranda*[13] rights; (iii) based on Defendants' statements, there was probable cause to support Defendants' arrests, and therefore the arrests were lawful; and (iv) the buccal swab from Bell was obtained voluntarily. (*Id.* at 9-12).

## D.  Trial and Verdict

On March 24, 2008, the court granted Defendants' application to sever their trials, and Petitioner's jury trial commenced. (Grasso Aff. ¶ 3).  At the close of the People's case, Petitioner's counsel moved to dismiss all of the charges against Petitioner. (T12: 67-80).  In relevant part, Petitioner's counsel argued that the kidnapping and felony murder charges should be dismissed because the alleged kidnapping was "merely incidental" to the underlying crime and because there was "absolutely no evidence that Mr. Beary was alive at the time that he was placed in the automobile's trunk." (T12: 76-78).  The court denied Petitioner's motion to dismiss

---

[12] Refers to Lauren E. Grasso's Affirmation in Opposition to a Petition for a Writ of Habeas Corpus. (Docket No. 7).

[13] *Miranda v. Arizona*, 384 U.S. 436 (1966).

counts one through six, but granted Petitioner's motion to dismiss the two counts of criminally

using drug paraphernalia in the second degree (counts seven and eight). (T12: 86).

At the close of evidence, Petitioner again moved to dismiss several of the charges in the

indictment. (T14: 35-42).  As to the kidnapping and felony murder charges, Petitioner's counsel

renewed the arguments he had made at the close of the People's case, arguing that the alleged

kidnapping was not "separate and distinct" from the underlying crime and "there was no proof

whatsoever that Mr. Beary was alive when he went into the trunk." (T14: 40-42).  The People

responded that the kidnapping began when Defendants had Beary restrained in the backyard and

began beating him. (T14: 45-46).  The court summarily denied Petitioner's motions to dismiss.

(T14: 48).

On April 16, 2008, Petitioner was acquitted of one count of murder in the second degree

(intentional murder) (count one) and convicted of two counts of murder in the second degree

(depraved indifference murder and felony murder) (counts two and three), kidnapping in the first

degree (count four), tampering with physical evidence (count five) and criminal possession of

marijuana in the fourth degree (count six). (T16: 14-15).

**E.  Motion Pursuant to N.Y. C.P.L. § 330.30**

By papers dated June 30, 2008, Petitioner, through counsel, moved pursuant to N.Y.

C.P.L. § 330.30[14] to dismiss the indictment, to vacate the jury's verdict and for a new trial. (Ex.

3).  First, Petitioner moved to dismiss the indictment (or, in the alternative, to reduce the charges

to lesser-included offenses) on the grounds that the evidence submitted to the grand jury was

---

[14] N.Y. C.P.L. § 330.30 provides, in relevant part, that "[a]t any time after rendition of a verdict of guilty and before
sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon . . .
[a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction,
would require a reversal or modification of the judgment as a matter of law by an appellate court."

legally insufficient and the grand jury proceeding was defective. (*Id.* ¶¶ 4-13). Second, Petitioner moved to set aside his conviction for depraved indifference murder on the ground that the evidence was legally insufficient to support the conviction. (*Id.* ¶¶ 15-40). Third, Petitioner argued that the prosecution improperly introduced photographs of the deceased victim solely to arouse the jury's emotions and prejudice Petitioner. (*Id.* ¶¶ 41-42). Fourth, Petitioner claimed that the kidnapping and felony murder convictions should be dismissed pursuant to New York's "merger doctrine" because the alleged kidnapping was "merely incidental to the underlying crime" and because "there was absolutely no proof that [Petitioner] kidnapped the Decedent" in this case. (*Id.* ¶¶ 43-48). Fifth, Petitioner moved for a new trial on the ground that the jury had been improperly instructed on the deliberate indifference murder charge. (*Id.* ¶ 49). The People opposed by papers dated July 11, 2008, (Ex. 4), and Petitioner submitted a reply dated July 21, 2008, (Ex. 5).

The court denied Petitioner's application in a written decision and order dated July 25, 2008. (Ex. 6). First, the court denied Petitioner's motion to dismiss the indictment, stating that the Court had already ruled on the motion, which Petitioner originally made as part of his pre-trial omnibus motion, and that the argument was not properly raised in the context of a N.Y. C.P.L. § 330.30 application. (*Id.* at 1). Second, the court concluded that the photographs of the victim were properly admitted because they were relevant to the nature of the victim's injuries and the nature of Defendants' conduct, *i.e.*, whether Defendants acted with depraved indifference. (*Id.* at 2). Third, the court found that the evidence was legally sufficient to support the convictions, stating that Petitioner's arguments that "the facts did not prove the element of depraved indifference or that the kidnapping was merely incidental to the murder run contrary to the verdict rendered by the jury and contrary to the evidence presented at trial." (*Id.*). Finally,

the court found that the jury had been properly instructed on the depraved indifference murder charge. (*Id.*).

## F.  Sentencing

On July 28, 2008, the court sentenced Petitioner to three concurrent terms of incarceration of twenty-five years to life for the charges of depraved indifference murder, felony murder and kidnapping in the first degree (counts two, three and four); a concurrent term of one year of incarceration for the charge of criminal possession of marijuana in the fourth degree (count six); and a consecutive term of one-and-one-third to four years of incarceration for the crime of tampering with physical evidence (count five). (S[15]: 17).  The court also imposed a $270 mandatory surcharge and a $50 DNA fee and revoked Petitioner's driver's license for a period of six months based on the criminal possession of marijuana conviction. (S: 17-18).

## G.  Direct Appeal

Petitioner, through counsel, filed a direct appeal of Petitioner's convictions by papers dated January 12, 2010. (Ex. 7).  Petitioner advanced four main arguments in his brief.  First, Petitioner argued that the submission of the twin counts of intentional murder and depraved indifference murder to the jury violated Petitioner's rights to a fair trial and due process of law. (*Id.* at 36-42).  Second, Petitioner argued that his convictions for depraved indifference murder, felony murder, kidnapping, tampering with physical evidence and criminal possession of marijuana were based upon legally insufficient evidence, were not proven beyond a reasonable doubt and were against the weight of the evidence. (*Id.* at 42-61).  As part of this argument, Petitioner claimed that his kidnapping conviction was precluded by the merger doctrine. (*Id.* at 55-57).  Third, Petitioner stated that the prosecutor's repeated use of statements by Petitioner's

---

[15] Refers to the transcript of Petitioner's sentencing hearing, held on July 28, 2008. (Docket No. 7-38).

co-defendants was impermissible hearsay and violated Petitioner's rights to confrontation and due process. (*Id.* at 61-62).  Fourth, Petitioner claimed that prosecutorial misconduct during the summation deprived Petitioner of his rights to a fair trial and due process. (*Id.* at 62-63).  The People opposed Petitioner's appeal by papers dated June 24, 2010. (Ex. 8).  Petitioner, through counsel, submitted a reply dated July 10, 2010. (Ex. 9).

The Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("Second Department") affirmed the judgment against Petitioner on March 15, 2011. *People v. Bussey*, 919 N.Y.S.2d 71 (N.Y. App. Div. 2011), *aff'd as modified*, 970 N.E.2d 404 (N.Y. 2012).  First, the Second Department held that, viewing the evidence in the light most favorable to the prosecution, the evidence was legally sufficient to establish that Petitioner was guilty of the crime of depraved indifference murder. *Id.* at 72-73.  Second, the Second Department held that, again viewing the evidence in the light most favorable to the prosecution, the evidence was legally sufficient to establish the defendant's guilt of kidnapping in the first degree and felony murder. *Id.* at 73.  On this point, the Second Department explicitly found that "the merger doctrine is inapplicable in this case" because the "acts constituting the kidnapping were discrete acts" that "did not constitute 'a minimal intrusion necessary and integral to another crime.'" *Id.* (citations omitted).  Finally, the Second Department rejected Petitioner's other arguments as either meritless, unpreserved or both. *Id.* at 73-74.

The New York Court of Appeals ("Court of Appeals") granted Petitioner's application for leave to appeal the Second Department's decision on June 15, 2011. (Ex. 11).  Petitioner filed a memorandum in support of his appeal dated August 8, 2011, essentially renewing the arguments from his brief to the Second Department. (Ex. 12).  The People opposed by papers dated October 4, 2011. (Ex. 13).  Petitioner submitted a reply dated October 17, 2011. (Ex. 14).

On May 3, 2012, the Court of Appeals modified Petitioner's judgment by reducing his conviction for depraved indifference murder (count two) to manslaughter in the second degree. *Bussey*, 970 N.E.2d at 407.  As to the depraved indifference charge, the Court of Appeals held that "[t]he People did not demonstrate that defendant evinced utter disregard for the victim's life to the extent that he did not care whether the victim was killed." *Id.* at 407.  The Court of Appeals also analyzed the merger doctrine and held that "the merger doctrine does not come into play as the People demonstrated that the acts constituting kidnapping were separate and distinct from the prior acts which led to the victim's death." *Id.* at 407-09.  The Court of Appeals then held that Petitioner's "remaining contentions, to the extent that they are properly raised on appeal and preserved for review, are meritless." *Id.* at 409.  The Court of Appeals affirmed Petitioner's judgment, as modified, and remitted the matter back to the Orange County Court for resentencing on the manslaughter count. *Id.*

## H.  Resentencing

On July 12, 2012, Judge Freehill in the Orange County Court sentenced Petitioner on the manslaughter in the second degree count to an indeterminate term of incarceration of five to fifteen years.[16] (Grasso Aff. ¶ 7).

## I.  Federal Habeas Corpus Proceedings

Petitioner filed the instant habeas petition ("Petition") on October 28, 2012, (Docket No. 1), and Petitioner's counsel filed a memorandum of law in support of the Petition dated November 14, 2012, (Docket No. 2).  Respondent opposed the Petition by affidavit and memorandum of law dated March 28, 2013. (Docket Nos. 7, 7-1).  Petitioner's counsel submitted

---

[16] Respondent notes that Petitioner filed a notice of appeal upon his resentence and that, at the time of Respondent's filing, that appeal was pending. (Grasso Aff. ¶ 7 n.1).  The parties have not updated the Court as to the status of that appeal.

a reply by papers dated April 23, 2013. (Docket No. 8).  For the reasons set forth below, I respectfully recommend that the Petition be denied.

## II.  APPLICABLE LAW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  "Before a federal district court may review the merits of a state court criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Visich v. Walsh*, No. 10 Civ. 4160(ER)(PED), 2013 WL 3388953, at *9 (S.D.N.Y. July 3, 2013).  The procedural and substantive standards are summarized below.

### A.  Timeliness Requirement

Federal habeas corpus petitions are subject to AEDPA's strict, one-year statute of limitations. 28 U.S.C. § 2244(d)(1).  The statute allows for four different potential starting points to determine the limitations period and states that the latest of these shall apply.  As the statute explains:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized

> by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).  However, this one-year period will be tolled during the pendency of a properly filed application for post-conviction relief. 28 U.S.C. § 2244(d)(2).  This period may also be subject to equitable tolling, but "only in the rare and exceptional circumstance." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (quotation marks and citation omitted); *see also Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (setting forth a two-step analysis for equitable tolling).

## B.  Exhaustion as a Procedural Bar

A habeas petition may not be granted unless the petitioner has exhausted his claims in state court. *See* 28 U.S.C. § 2254(b).  As the statute prescribes:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)-(c).

Exhaustion requires a prisoner to have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (citation omitted).  If a petitioner "cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court." *Davis v. Strack,* 270 F.3d 111, 122 (2d Cir. 2001); *see also Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (even "a minimal reference to the Fourteenth Amendment" presents a federal constitutional claim to the state courts).  However, a petitioner may fairly present his claim even without citing to the U.S. Constitution.  As the Second Circuit has stated:

> the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982).  Fair presentation includes petitioning for discretionary review in the state's highest appellate court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999) ("a state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement").

However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (citation omitted).  In such cases, although the claim is technically unexhausted, the district court may deem the claim to be exhausted but procedurally barred from habeas review. *See id.* at 140 ("a claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to

14

which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).

Under New York law, defendants are permitted only "one direct appeal." *Lowman v. New York*, No. 09-CV-0058T, 2011 WL 90996, at *9 (W.D.N.Y. Jan. 11, 2011) (citing N.Y. Ct. R. § 500.20[17]); *see also Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008) ("Any attempt to raise these claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals.").  Petitioners must raise record-based claims by direct appeal rather than by a collateral motion in state court. *See, e.g.*, *O'Kane v. Kirkpatrick*, No. 09 Civ. 05167(HB)(THK), 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("all claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."), *report and recommendation adopted*, No. 09 Civ. 05167(HB)(THK), 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011); *Lowman*, 2011 WL 90996, at *9 ("Collateral review of this claim—by way of another CPL § 440 motion—is also barred because the claim is a matter of record that could have been raised on direct appeal, but unjustifiably was not.") (citing N.Y. C.P.L. § 440.10(2)(c)[18]).  In the context of claims for ineffective assistance of counsel, "[c]laims are record-based when a reviewing court could

---

[17] This rule states, in relevant part, that a letter application for leave to appeal "shall indicate . . . (2) that no application for the same relief has been addressed to a justice of the Appellate Division, as *only one application is available*." N.Y. Ct. R. 500.20(a) (emphasis added).

[18] N.Y. C.P.L. § 440.10(2)(c) states, in relevant part, that a court must deny a § 440.10 motion to vacate judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal

conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts that would need to be developed through a post-conviction motion pursuant to CPL 440.10." *Rodriguez v. Smith*, No. 10-CV-8306 (KMK)(LMS), 2015 WL 6509153, at *14 (S.D.N.Y. Oct. 28, 2015) (citation omitted).

To avoid the procedural default of an unexhausted claim, a petitioner may show "cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, *i.e.*, the petitioner is actually innocent." *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003) (citations omitted).

## C.  Adequate and Independent State Grounds as a Procedural Bar

As the Second Circuit has instructed, federal courts "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Kozlowski v. Hulihan*, 511 F. App'x 21, 23 (2d Cir. 2013) (summary order) (citations omitted). This preclusion applies even if the state court alternatively rules on the merits of the federal claim, so long as there is an adequate and independent state ground that would bar the claim in state court. *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).

A state ground is "independent" if it "'fairly appears' to rest primarily on state law." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 253 (E.D.N.Y. 2014) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)).  In the normal case, a ground is "adequate only if it is based on a rule that is firmly established and regularly followed by the state in question." *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) (citation omitted).  A decision that a state procedural rule is

---

during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."

inadequate should not be made "lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (citation omitted).  However, "there are 'exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" *Id.* at 240 (citation omitted).  In determining whether a case is "exceptional" in that the state ground should be held inadequate, the Second Circuit uses the following factors as "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* (quotation marks and citation omitted).

To avoid a procedural default based on independent and adequate state grounds, a petitioner may "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (citations omitted).

**D.  AEDPA Standard of Review**

When a federal court reaches the merits of a habeas petition, AEDPA prescribes a "highly deferential" standard for reviewing state court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015) (quoting *Richter*, 562 U.S. at 98).  An application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

17

> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Courts have interpreted the phrase "adjudicated on the merits" in AEDPA as meaning that a state court "(1) dispose[d] of the claim 'on the merits,' and (2) reduce[d] its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). Courts examine the "last reasoned decision" by the state courts in determining whether a federal claim was adjudicated on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (noting the presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."). "[W]hen a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013) (citing *Richter*, 562 U.S. at 86) (emphasis in original). The same presumption applies when "a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question." *Id.* This "presumption is a strong one that may be rebutted only in unusual circumstances." *Id.* at 1096.

If a state court adjudicates a federal claim on the merits, the Court must apply AEDPA deference to that state court ruling.[19] 28 U.S.C. § 2254(d)(1)-(2). In the context of AEDPA deference, the phrase "clearly established Federal law" means "the holdings, as opposed to the

---

[19] If, by contrast, a state court does not adjudicate a federal claim on the merits, "AEDPA deference is not required . . . [and] conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo." *DeBerry v. Portuondo*, 403 F.3d 57, 66-67 (2d Cir. 2005) (citations omitted).

dicta, of [the Supreme Court of the United States'] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000).  "A state court decision is contrary to such clearly established federal law if it applies a rule that contradicts the governing law set forth in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (quotation marks and citations omitted).

A state court decision involves an "unreasonable application" of Supreme Court precedent if: (1) "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.  For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous—it must have been "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  In other words, a state court's decision "that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). However, "the trial court's decision need not teeter on 'judicial incompetence' to warrant relief under § 2254(d)." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).  If a state court decision does not contain reasons for the dismissal of a defendant's federal claim, the Court must consider "'what arguments or theories . . . could have supported[] the state court's decision,' and may grant habeas only if

'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the holding in a prior decision of' the Supreme Court." *Lynch v. Superintendent Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (alterations in original) (citation omitted).

## III. DISCUSSION

### A. The Parties' Arguments

### i. Petitioner's Memorandum of Law in Support of the Petition

In his habeas brief, Petitioner challenges his convictions for kidnapping in the first degree and felony murder. (Memorandum[20] at 24).  Petitioner argues that "(1) both crimes should have merged into the crime of intentional murder or assault in the first degree, (2) the failure of the State courts to require such a merger results in legally insufficient convictions in violation of Petitioner's right to due process of law, and (3) the failure of the State courts to require such a merger is an unreasonable application of the Supreme Court's legal sufficiency principles as explicated in [*Jackson v. Virginia*, 443 U.S. 307 (1979)] and its progeny." (*Id.* at 25).

Petitioner's main argument is that any due process analysis under *Jackson* must include an inquiry into whether his kidnapping and felony murder convictions merged into the underlying crimes, stating that "the merger doctrine has become . . . fundamental to the definition of kidnapping and . . . therefore, no sufficiency of the evidence analysis of a kidnapping conviction can ignore merger principles." (Memorandum at 49).  Accordingly, Petitioner presents a history of the merger doctrine in New York and an overview of merger doctrine principles from other states. (*Id.* at 29-34).  Petitioner then engages in a detailed analysis of the factors relevant to a merger analysis, the application of the merger doctrine to the facts at hand and the merger doctrine as applied to the crime of murder. (*Id.* at 34-49).

---

[20] Refers to Petitioner's Memorandum of Law. (Docket No. 2).

Relatedly, Petitioner contends that the merger doctrine is not purely a state law issue and is cognizable on federal habeas review. (Memorandum at 49-60).  In so doing, Petitioner (i) attempts to distinguish New York district court decisions that have held that the merger doctrine is not cognizable on federal habeas review, and (ii) outlines cases "that contain the analyses necessary for a proper *Jackson v. Virginia* review of merger doctrine issues." (*Id.* at 49-60).

## ii.  Respondent's Opposition

Respondent argues that the Petition should be denied.  First, Respondent claims that the Court should decline to review the Petition as a matter of discretion because Petitioner is only challenging two of his five convictions and therefore even a successful challenge would not entitle Petitioner to his immediate release. (Opp.[21] at 21).  Second, Respondent asserts that Petitioner's "challenge is meritless and fails to state a cognizable federal constitutional claim." (*Id.*).  As part of this argument, Respondent states that Petitioner merely "presents what amounts to a survey of other state and federal court decisions" regarding the merger doctrine, asserts that Petitioner's arguments were "plainly rejected on his direct appeal" and fail under the deferential AEDPA standard of review, and notes that the established authority in this jurisdiction holds that a merger doctrine argument is a state law claim that is not cognizable on federal habeas review. (*Id.* at 21-26, 28-30).  Finally, Respondent argues that Petitioner "fails to demonstrate any other basis for relief" in that (i) Petitioner has not shown "what particular crimes his convictions actually merged with," and (ii) the Court of Appeals' determination that Petitioner acted recklessly "precludes him from arguing that the kidnapping somehow merged with an intentional crime." (*Id.* at 27).

## iii.  Petitioner's Reply

---

[21] Refers to Respondent's Memorandum of Law. (Docket No. 7-1).

Petitioner advances several arguments in response.  First, Petitioner argues that the "concurrent sentence doctrine" should not be applied in this case because his concurrent sentences are much shorter than his sentences for the kidnapping and felony murder convictions. (Reply[22] at 1-2).  Second, Petitioner states that he presented a "survey" of federal and state precedent to show that the issues involved in a "merger analysis are *inextricably intertwined*" with a legal insufficiency analysis under *Jackson*. (*Id.* at 3-4).  Third, Petitioner notes that Respondent's argument that "there was no crime for the kidnapping to merge with" is irrelevant because the merger doctrine should have precluded the charges of intentional murder, kidnapping and felony murder from ever going to the jury. (*Id.* at 5).  Fourth, Petitioner states that Respondent's argument that a kidnapping cannot merge into a crime of recklessness is unsupported by any authority and "violates common sense." (*Id.*).

## B.  Analysis

For the reasons that follow, I respectfully recommend that the Petition be dismissed in its entirety.

### i.  Concurrent Sentence Doctrine

As an initial matter, Respondent contends that the Court should decline to review the Petition because Petitioner only challenges two of his five convictions and will not be entitled to an immediate release from prison even if he prevails. (Opp. at 21).  I disagree.

The "concurrent sentence" doctrine "permits an appellate court, within its discretion, to affirm summarily a conviction for which an appellant's sentence runs concurrently with that for another, valid conviction." *United States v. Vargas*, 615 F.2d 952, 956 (2d Cir. 1980).  It has been applied by courts analyzing federal habeas petitions. *See, e.g.*, *United States ex rel. Weems*

---

[22] Refers to Petitioner's Reply Memorandum of Law. (Docket No. 8).

*v. Follette*, 414 F.2d 417, 418-21 (2d Cir. 1969) (declining to review the merits of a federal habeas petition where the petitioner was serving concurrent sentences of ten to thirty years on three separate convictions for first degree robbery and only challenged one of the three convictions); *Padilla v. Mann*, No. 92 Civ. 6642 (MGC), 1994 WL 542247, at *1, 8 (S.D.N.Y. Oct. 4, 1994) (declining to review constitutionality of conviction for kidnapping in the second degree where the petitioner's "longer concurrent sentence on [a kidnapping in the first degree conviction] would prevent petitioner's release from confinement"), *aff'd*, 57 F.3d 1063 (2d Cir. 1995); *Steiner v. Comm'r of Correction*, 490 F. Supp. 204, 205, 208 (S.D.N.Y. 1980) (declining to address petitioner's challenge to his conviction for "illegal possession of vehicle identification number plates" where his conviction for attempted grand larceny was constitutional "and the sentence that was imposed upon the second count [was] concurrent with and for the same term of confinement as the first").

However, "[a]pplication of the concurrent sentence doctrine is now disfavored, and is the exception rather than the rule." *Smith v. Herbert*, 275 F. Supp. 2d 361, 367 (E.D.N.Y. 2003) (citations omitted).  As the Supreme Court has noted:

> The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

*Rutledge v. United States*, 517 U.S. 292, 302 (1996) (quoting *Ball v. United States*, 470 U.S. 856, 864-65 (1985)).

Here, Petitioner challenges his convictions for kidnapping in the first degree and felony murder, and he is serving concurrent sentences of twenty-five years to life on each of these two counts. (S: 17).  He does not challenge his convictions for manslaughter in the second degree (for which he is serving a concurrent term of five to fifteen years), criminal possession of marijuana in the fourth degree (concurrent term of one year), or tampering with physical evidence (consecutive term of one-and-one-third to four years). (S: 17).  As Petitioner points out, if the Court invalidates the kidnapping and felony murder convictions and their attendant maximum life sentences, Petitioner will leave prison much earlier than he otherwise would. (Reply at 1).  This is reason enough to review the merits of the Petition.  In addition, Petitioner's kidnapping and felony murder convictions have potential adverse consequences—above and beyond the actual terms of incarceration—that Petitioner may avoid if those convictions are vacated. *See Rutledge*, 517 U.S. at 302.

Accordingly, I respectfully recommend that Your Honor review the Petition.

**ii.  The Merger Doctrine Claim Is Not Cognizable on Federal Habeas Review**

Respondent also contends that the Petition should be denied because Petitioner's merger doctrine argument is a state law claim that is not cognizable on federal habeas review. (Opp. at 26-27).  I agree.

AEDPA constrains federal court review of state court determinations to those in which a person claims to be in custody in violation of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Guzman v. Couture*, No. 99CIV11316(RMB)(HBP), 2003 WL 165746, at *11 (S.D.N.Y. Jan. 22, 2003) ("In order for a claim to be cognizable on federal habeas corpus review, it must challenge the legality of custody on the ground that it is 'in violation of the Constitution or laws or treaties of the United States.'") (quoting 28 U.S.C. §

24

2254(a)); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("federal habeas corpus relief does not lie for errors of state law.") (citations omitted).

Respondent cites several cases for the proposition that Petitioner's merger doctrine argument is a state law claim that is not cognizable on federal habeas review. (Opp. at 26-27, 29). In most of these cases, the court appears to have dismissed a *stand-alone* state law merger doctrine claim, not one that was asserted as part of a federal constitutional challenge. *See Leiva v. Heath*, No. 10 Civ. 3069(NRB), 2011 WL 2565487, at *6-7 (S.D.N.Y. June 22, 2011) (holding that merger doctrine claim "was not fairly presented in the [state court] brief as a claim under federal or constitutional law" and was not cognizable on federal habeas review); *Aughtry v. Artus*, No. 09-CV-1026 (MAT), 2011 WL 2421207, at *5 (W.D.N.Y. June 13, 2011) (noting that "district courts in this Circuit have held that *stand-alone* claims of violations of New York's merger doctrine are not cognizable on habeas review" and dismissing petitioner's merger doctrine claim as not cognizable) (citations omitted) (emphasis added); *Brown v. Conway*, No. 06 Civ. 5041(RO), 2011 WL 1362125, at *3-4 (S.D.N.Y. Apr. 8, 2011) (distinguishing petitioner's stand-alone merger doctrine claim from "[p]etitioner's merger claim in the context of an alleged equal protection claim" and dismissing the former as not cognizable and the latter on the merits); *McLeod v. Graham*, No. 10 Civ. 3778(BMC), 2010 WL 5125317, at *6 (E.D.N.Y. Dec. 9, 2010) (holding without discussion that "petitioner's merger claim . . . is precluded from federal review for not being a federally cognizable claim"); *Smith v. West*, 640 F. Supp. 2d 222, 234 n.3 (W.D.N.Y. 2009) (noting that "[f]ederal courts have held that stand-alone claims of violations of New York's 'merger doctrine' are not cognizable on habeas review") (citation omitted); *Mackenzie v. Portuondo*, 208 F. Supp. 2d 302, 322 (E.D.N.Y. 2002) ("Petitioner claims that, in violation of state law, the trial court erred because it did not apply the 'merger doctrine'

and did not dismiss the Unauthorized use of a Motor Vehicle charge as a lesser included offense of Robbery. . . . Here, the Petitioner's claims are based entirely on alleged state law violations. The Petitioner has not alleged, much less proven, that the supposed state law errors violated his federal constitutional rights."). *But see Dinsio v. Superintendent*, Nos. 9:03-CV-0780 (LEK/VEB), 9:04-CV-0015 (LEK/GJD), 2007 WL 4002684, at *12 (N.D.N.Y. Nov. 15, 2007) (holding that petitioner's merger doctrine claim was not cognizable on federal habeas review even though he apparently raised it in the context of a legal insufficiency challenge).

Here, Petitioner clearly phrases his merger doctrine claim in federal constitutional terms, arguing that "the failure of the State courts to require . . . a merger results in legally insufficient convictions in violation of Petitioner's right to due process of law."[23] (Memorandum at 25). Habeas courts in the Second Circuit have analyzed New York merger doctrine claims on the merits when petitioners have included these claims as part of a federal constitutional challenge. *See Cardona v. Goord*, 811 F. Supp. 2d 655, 664-667 (E.D.N.Y. 2011) (noting, in a case involving felony murder with a kidnapping predicate, that petitioner appeared to be advancing a merger doctrine argument as part of his legal insufficiency claim and analyzing the two claims together on the merits); *Brown v. Conway*, No. 06 Civ. 5041(SCR)(GAY), 2009 WL 7809913, at *10 (S.D.N.Y. 2009) (noting that, "[r]eading petitioner's claim broadly, the due process claim therein amounts to an insufficiency of the evidence claim, essentially claiming that New York's merger doctrine prevents the People from establishing the elements of kidnapping," and then denying the legal insufficiency claim on the merits).

---

[23] Petitioner made essentially the same argument in his state court brief on direct appeal to the Second Department, (Ex. 7 at 42-45, 55-57, 61), and to the Court of Appeals, (Ex. 12 at 63-92). Therefore, I find that Petitioner exhausted this federal constitutional claim in the state courts. *See Reid*, 961 F.2d at 376 (even "a minimal reference to the Fourteenth Amendment" presents a federal constitutional claim to the state courts); *Daye*, 696 F.2d at 194 (petitioner may fairly present a claim to the state courts by asserting it "in terms so particular as to call to mind a specific right protected by the Constitution").

Like the petitioner in *Brown*, Petitioner essentially argues that the merger doctrine prevented the People from establishing the essential elements of the crime of kidnapping beyond a reasonable doubt. (Memorandum at 25, 49). "While [P]etitioner's argument is innovative, not 'every error of state law can be transmogrified by artful argumentation into a constitutional violation.'" *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citation omitted).  The Second Circuit has explicitly held, in a case in which the petitioner similarly argued that an error of state law resulted in a legally insufficient conviction, "that a writ of habeas corpus based on [legal insufficiency] may be issued only where the government's burden of proof has been impermissibly reallocated or reduced." *Id.* at 182.  "If this were not the rule, almost every nuance of state law could be fashioned into a [legal insufficiency] problem, thereby transforming federal habeas courts into super-appellate state courts," a role which "[b]oth Congress and the Supreme Court prohibit for federal habeas courts." *Id.* at 182-83.  Here, Petitioner does not argue that the government's burden of proof was "impermissibly reallocated or reduced," *id.* at 182, and the Court does not see a basis in the record for such an assertion.

Accordingly, I respectfully recommend that Your Honor deny Petitioner's merger doctrine claim on the ground that it is not cognizable on federal habeas review.

### iii.  The Merger Doctrine Claim Also Fails under the AEDPA Standard of Review

Respondent also contends that the Petition should be denied because Petitioner's merger doctrine argument was "plainly rejected on his direct appeal" and fails under the deferential AEDPA standard of review. (Opp. at 25, 28-29).  If Your Honor reaches the merits of Petitioner's claim, I agree that it should be denied under the AEDPA standard of review.

As noted above, Petitioner challenges his convictions for kidnapping in the first degree and felony murder, arguing that "(1) both crimes should have merged into the crime of

intentional murder or assault in the first degree[24] [because the asportation of the victim was 'merely incidental' to the commission of those crimes], (2) the failure of the State courts to require such a merger results in legally insufficient convictions in violation of Petitioner's right to due process of law, and (3) the failure of the State courts to require such a merger is an unreasonable application of the Supreme Court's legal sufficiency principles as explicated in [*Jackson*] and its progeny." (Petition at 6; Memorandum at 25).

A federal habeas court considering a claim that the evidence was legally insufficient to sustain a conviction must employ "a doubly deferential standard of review." *Garbutt v. Conway*, 668 F.3d 79, 81 (2d Cir. 2012). First, even on direct review, a petitioner "bears a heavy burden because a reviewing court must consider the evidence 'in the light most favorable to the prosecution' and uphold the conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009) (quoting *Jackson*, 443 U.S. at 319 (emphasis in *Jackson*)).[25] Second, if the state courts have denied a legal insufficiency claim on the merits, a federal habeas court "may not grant the writ unless we conclude that *no* reasonable court could have held that *any* reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt." *Garbutt*, 668 F.3d at 82. "We should be particularly deferential, moreover, where . . . the state appellate court's assessment of the evidence is intertwined with its interpretation of a complex and evolving body of state law, with which the state courts have far more familiarity than we have." *Id.*

---

[24] Respondent notes that Petitioner was not charged with or convicted of first-degree assault and that he was acquitted of intentional murder. (Opp. at 27; Ex. 1; T16: 14).

[25] As the Supreme Court noted, "[t]he constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless. Under our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." *Jackson*, 443 U.S. at 307, 323–24 (citation omitted).

In addition, when considering a legal insufficiency argument, "[a] federal court must look to state law to determine the elements of the crime." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citation omitted) (alteration in original).  Under New York law, "[a] person is guilty of kidnapping in the first degree when he abducts another person and when . . . [t]he person abducted dies during the abduction or before he is able to return or to be returned to safety." N.Y. Penal Law § 135.25(3).  A person is guilty of felony murder when, "[a]cting either alone or with one or more other persons, he commits or attempts to commit . . . kidnapping, . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants." N.Y. Penal Law § 125.25(3).  As relevant to the felony murder charge, "[a] person is guilty of kidnapping in the second degree when he abducts another person." N.Y. Penal Law § 135.20.[26]  The term "abduct" means "to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force." N.Y. Penal Law § 135.00(2).  The term "restrain" is defined as follows:

> to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful. A person is so moved or confined "without consent" when such is accomplished by (a) physical force, intimidation or deception, or (b) any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement.

N.Y. Penal Law § 135.00(1).

---

[26] Kidnapping in the second degree was used as the predicate for the felony murder charge. (T15: 184-85).

New York's merger doctrine "is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them." *Bussey*, 970 N.E.2d at 408 (quoting *People v. Cassidy*, 358 N.E.2d 870, 873 (N.Y. 1976)). "Taken literally, New York's kidnapping statutes could be applied to crimes such as assault, robbery, and rape that in many cases inherently include an abduction, but which were not intended to be charged as kidnappings." *Cardona*, 811 F. Supp. 2d at 665. "The doctrine arose out of 'an aversion to prosecuting a defendant on a kidnapping charge in order to expose him to the heavier penalty,' where defendant was charged with kidnapping and the acts appeared to be no more than a rape or robbery." *Bussey*, 970 N.E.2d at 408 (citation omitted). For example, the Court of Appeals has held that the merger doctrine applied to bar a kidnapping conviction "where any restriction of the victim's movements was wholly incidental to the simultaneous commission of the crime of attempted rape." *People v. Geaslen*, 430 N.E.2d 1280, 1282 (N.Y. 1981). On the other hand, the "doctrine was not created to preclude convictions for separate crimes merely because they were committed together." *Cartagena v. Corcoran*, No. 04-CV-4329 (JS), 2009 WL 1406914, at *9 (E.D.N.Y. 2009) (citations omitted).

Here, the Court of Appeals denied Petitioner's combined merger doctrine and legal insufficiency claim on the merits, stating:

> Here, the merger doctrine does not come into play as the People demonstrated that the acts constituting kidnapping were separate and distinct from the prior acts which led to the victim's death. The evidence reveals that defendant placed the victim in the trunk of his car and subsequently dumped the victim in a shallow creek approximately 18 miles away, after the beating of the victim occurred. An eyewitness testified that the victim was struggling to breathe prior to being placed in the trunk of the vehicle. The medical testimony explained that the victim died approximately one to two hours after he had vomited in the blanket wrapped around his head. Thus, sufficient evidence exists for the jury to have concluded that the victim was alive at the time he was taken and that he died before he was able to

return or be returned to safety. The beating of the victim, and his subsequent death, were discrete and distinct acts separate from the taking of the victim and his asportation to the creek. Therefore, the acts subsequent to the beating—namely, the asportation of the victim and his death during the asportation or prior to his return—support the separate convictions of kidnapping in the first degree and felony murder.

*Bussey*, 970 N.E.2d at 408-09 (citations omitted).

Employing the "doubly deferential standard of review" mandated in this context, I cannot "conclude that *no* reasonable court could have held that *any* reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt." *Garbutt*, 668 F.3d at 82. Petitioner admitted to loading Beary into the trunk of his car and driving to Poughkeepsie. (T13: 67-71). Boyd testified that, before Petitioner and Thomas lifted Beary over the fence and placed him in the trunk of the car, Beary was moaning and Boyd "could still hear him breathing a little bit." (T4: 24). Dr. Reiber testified that Beary was alive for at least one to two hours after he reaspirated the vomit that was found on his face and on the blanket that had been wrapped around his head while he was in the backyard. (T10: 88, 118, 124-26). From this evidence, it was reasonable for the Court of Appeals to find that a rational juror could conclude that Petitioner and his co-defendants "abducted" Beary while he was still alive, and that Beary "died before he [was] able to return or to be returned to safety." N.Y. Penal Law § 135.25(3). In addition, it was reasonable for the Court of Appeals to conclude that the merger doctrine did not bar Petitioner's kidnapping conviction, where the acts constituting the kidnapping were not "so much the part of [the beating and death of Beary] that the [beating and death] could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them." *Bussey*, 970 N.E.2d at 408 (quoting *Cassidy*, 358 N.E.2d at 873). "A fortiori, the [Court of Appeals'] conclusion that the evidence was sufficient to meet the state law

definition was not an unreasonable application of federal constitutional law." *Garbutt*, 668 F.3d at 82.[27]

Accordingly, I respectfully recommend that Your Honor deny Petitioner's merger doctrine claim under the AEDPA standard of review as well.

## IV.  CONCLUSION

For the foregoing reasons, I conclude and respectfully recommend that this habeas petition be denied in its entirety.

## V.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from the receipt of this Report and Recommendation to serve and file written objections.  If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Nelson S. Román at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Requests for extensions of time to file objections must be made to the Honorable Nelson S. Román and not to the undersigned.  Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be

---

[27] Given this analysis, the Court need not address Respondent's additional arguments that (i) Petitioner has not shown "what particular crimes his convictions actually merged with," or (ii) the Court of Appeals' determination that Petitioner acted recklessly "precludes him from arguing that the kidnapping somehow merged with an intentional crime." (Opp. at 27).

rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:  October 19, 2016
       White Plains, New York

**RESPECTFULLY SUBMITTED,**

JUDITH C. McCARTHY
United States Magistrate Judge